## No. 195.

### ALLEN, WEST & BUSH v. NEW ORLEANS INSURANCE COMPANY.

1. Where a party applying for insurance upon a Flour and Grist Mill and Cotton Gin, has in his answers declared that the lights used were candles in a lantern and these rarely, and that the premises were used only in the daytime; and where also the policy stipulates that if the property insured be a manufacturing establishment, to run it at night, during extra time, or without a special, endorsed agreement to that effect, vacates the policy—held, all of this constitutes a warranty.

2. Under such a policy, the insurer is not liable for a loss occuring in the night time during the course of the unauthorized running of the Gin.

*Appeal from Civil District Court. Monroe J.*

*Miller, Finney & Miller* for plaintiffs, appellants.

*Leovy & Kruttschnitt* for defendants.

ROGERS, J.—The plaintiffs bring suit to recover the amount of a Policy of Insurance executed by defendants on a three-story

frame building, occupied as a flour and grist mill and Cotton Gin situated at Dyer's Station in the State of Tennessee. The property insured was destroyed by fire on November 13, 1879, at eleven o'clock at night.

In the application for insurance made by the insured, we find the following answers made to questions propounded:

Q.  Lights—if lamps, are they metal or glass?

A.  Candles in lanterns, but scarcely ever used.

Q.  During what hours are the premises worked?

A.  Only during the day.

There is no difference between counsel on the fact that the application forms part of the contract evidenced by the policy issued upon and after this application, and the question is virtually: do the above questions and answers constitute an affirmative or promissory warranty? In order to ascertain the intent of both parties to this contract, the instrument itself must aid the investigation, for the authorities cited by both counsel propound distinct and undoubted principles of law. We find no conflict in the law quoted, and if the issues depended entirely on the questions and answers we have quoted above, it would be necessary to inquire into the weight of authority urged by them.

It is evident that the inquiry as to the hours during which the mill was operated had more than a mere affirmative significance, for we find a condition of warranty attached to the policy in the following words:

"If it be a manufacturing establishment, running the whole or in part over or extra time, or running at night, without special agreement endorsed on this policy, this policy shall be void."

The object of the application for insurance was for the benefit of both parties and it contained all the data necessary to complete a perfect contract, and the acceptance of the risk by the Company and the policy by the defendant after his application, expressly declared, "that running at night without special agreement endorsed on the policy," vacated the policy.

No other reasonable conclusion can be reached than that it was contemplated by both parties that the mill would be oper-

ated during the day, as it was at the time of the application, and that if it was to be run over or in extra time or at night, an express agreement should be made and evidenced by endorsement on the policy.

In thus following the precise terms of a contract, perfectly unambiguous in its provisions, we can more certainly do substantial justice between parties than by relying upon what at best must be very unsatisfactory, when drawn from a construction upon the meaning of language used in the instrument, after the happening of an event that was probably not considered originally, certainly not by the insurer, who declared in his application that lights were seldom used and the mill only run during the day, and accepted a policy which acquired a specially endorsed agreement for running at night.

Judgment affirmed.